**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

SARA ALVARADO, individually and as guardian ad litem, MARTIN ALVARADO, VIVIAN ALVARADO, FABIAN ALVARADO, and ANGEL ALVARADO,

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendant.

_______________________________________/

CASE NO. CV-F-09-243 LJO SMS

**ORDER ON DEFENDANT'S MOTION TO DISMISS** (Doc. 27)

## INTRODUCTION

Plaintiffs Sara Alvarado, individually and as guardian ad litem on behalf of her children, Martin Alvarado, Vivian Alvarado, Fabian Alvarado, and Angel Alvarado ("Plaintiffs") bring this survivor action against defendant United States of America ("government"), asserting claims for negligence and premises liability arising from the February 7, 2007 death of Martin Alvarado ("Mr. Alvarado") on February 7, 2007 at the Dos Amigos Pumping Plant ("Dos Amigos"). The government moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the "independent contractor" exception to the Federal Torts Claims Act, 28 U.S.C. §2671 et seq. ("FTCA"), bars jurisdiction over Plaintiffs' claims. In opposition, Plaintiffs argue that the independent contractor exception to the FTCA is inapplicable, because the claims are based on the alleged direct negligence of employees of the government, not vicarious liability for the negligent acts of a contractor. In reply, the government argues that Plaintiffs fail to identify negligent acts of the government, and reiterate that this Court lacks jurisdiction over Plaintiffs' vicarious liability claims. For the following reasons, this Court DISMISSES Plaintiffs' complaint with leave to amend.

## BACKGROUND

Mr. Alvarado was employed by the State of California ("State") as a member of a scuba diving team. On February 7, 2007, Mr. Alvarado and a companion diver were assigned to inspect portions of the underwater intake at Dos Amigos, a water pumping plant facility located southwest of Los Banos, California.[1] One of the pumps was running at full capacity at the time of the dive. Mr. Alvarado and his companion diver were swept by the pumping water into a grate that was housing one of the pumps. The force of the water pinned the divers to this grate, which was obstructed partially by the accumulation of trash. The divers were unable to extricate themselves from the grate, and Mr. Alvarado and his companion diver drowned.

Plaintiffs are Mr. Alvarado's wife and heirs. The State Workers' Compensation Board awarded Plaintiffs $320,000 plus attorneys fees on June 10, 2008 in connection with Mr. Alvarado's death. Declaration of Alyson Berg ("Berg Decl."), Ex. A. On February 6, 2009, Plaintiffs initiated this action against the government. Plaintiffs allege that the government "created a dangerous condition for divers at Dos Amigos" and that the government's employees were negligent in several ways, including: the divers were allowed to dive at Dos Amigos when one of the pumps was in full speed operation; no lock-out/tag-out procedure was implemented for the underwater inspection; divers were allowed to dive without a top side tender or communication capability, contrary to commercial dive standards and the government's Diving Safe Practices Manual; when the divers did not emerge within a reasonable period of time, no emergency shutdown procedure of the operating pump was instituted either locally or remotely in Sacramento; no job hazard analysis was required to assess the risks the divers would be exposed to when diving with one of the pumps in full operation; no criteria was furnished or implemented for anticipated diving activities in the course of routine maintenance at the facilities; and despite knowing the trash system was inoperative, the government failed to assess the impact of the collection of trash against the trash racks, which increased the water velocity, on diver safety. Based on these allegations, Plaintiffs assert claims for negligence and premises liability against the government.

---

[1] Plaintiffs allege that Mr. Alvarado was inspecting portions of the underwater intake at Dos Amigos Pumping Plant. Compl., ¶10. In opposition to this motion, however, Plaintiffs write that "evidence is being developed that Defendant specifically requested this dive for the purposes of inspecting for quagga mussels." Pl. Reply, p. 9. As this allegation is unsupported, this Court considers for purposes of this motion the allegations of the complaint.

The government moved to dismiss on July 1, 2010. The government argues that this Court lacks jurisdiction over Plaintiffs' claims based on the independent contractor exception to the FTCA. In support of its motion, the government provides the following:

Dos Amigos is part of the San Luis Unit of the Central Valley Project. The Central Valley Project is the "largest federal water management project in the United States." *Westlands Water Dist. v. United States*, 337 F.3d 1092, 1095 (9th Cir. 2003). The State initially authorized construction of the Central Valley Project in 1933, but the federal government took over administration of the project in 1935 pursuant to the Reclamation Act of 1902. *Westlands*, 337 F.3d at 1095. The Central Valley Project is made up of a series of dams, reservoirs, hydropower generating stations, canals, electrical transmission lines, and other infrastructure. *United States v. Gerlach Live Stock Co.*, 339 U.S. 725, 733 (1950). In 1960, Congress authorized the construction of the San Luis Unit of the Central Valley Project, the principal purpose of which was to furnish water for the irrigation of approximately 500,000 acres of land in Merced, Fresno, and Kings Counties. Act of June 3, 1960, Pub. L. No. 86-488, 74 Stat, 156. The San Luis Unit includes the San Luis Dam and Reservoir, the San Luis Canal, and various pumping plants, including Dos Amigos.

Dos Amigos is a "joint use" facility, owned by the federal government, and operated by the State. San Luis Unit joint use facilities were authorized by Congress in 1960, when Congress authorized the Secretary of the Department of the Interior ("DOI") to enter into an agreement with the State that "shall provide, among other things, that the Secretary may turn over to the State the care, operation, and maintenance of any works of the San Luis unit which are used jointly by the United States and the State at such time and under such conditions as shall be agreed upon by the Secretary and the State[.]" Pub. L. No. 86-488, Section 3(g). Pursuant to this instruction, DOI entered into an agreement with the State's Department of Water Resources ("1961 Agreement") on December 31, 1961. The 1961 Agreement provided that when construction of a joint use facility neared completion, "the United States shall notify the State, and the State shall furnish operating personnel to begin operation and maintenance of the completed works under the direction of the United States." Berg Decl., Ex. A, ¶20(a). Upon so doing, the 1961 Agreement provides that "the State will operate and maintain such facilities or the unit in such a manner that the works shall remain in good and efficient condition to perform the storage and

conveyance of water as well and as efficiently as on the date of transfer." *Id.*, ¶20(b). Each joint use facility, including all appurtenances, equipment, supplies, manuals, and records, was to be transferred to the State "as a complete unit, insofar as possible, ready for operation in all respects." *Id.*, 20(c). Once transferred, the "State shall undertake property any maintenance and replacements on the joint use facilities which are determined by either party to be necessary." *Id.*, ¶20(d). The government completed construction of Dos Amigo and transferred it to the State for operation and maintenance in 1968.

The 1961 Agreement requires the government to pay "an equitable share of the operation, maintenance, and replacement costs of the joint-use facilities, including claims paid by either party." In addition, the 1961 Agreement allows the government "from time to time to make an appropriate inspection of the facilities...to ascertain whether the requirements of this agreement are being satisfactorily performed by the State." To take over the care, operation and maintenance of a joint-use facility, the government must first notify the State of how the State has failed to perform its obligations under the agreement and give the State at least two months to cure the default. *Id.*, ¶¶21(a), 22(a). The government has not invoked these takeover provisions as to Dos Amigos.

The government and the State entered into a supplemental agreement regarding the operation of the San Luis Unit on January 12, 1972 ("1972 Supplement"). Declaration of Pennino ("Pennino Decl."), Ex. B. Among other things, the 1972 Supplement provides: "If an emergency occurs which requires immediate change in the operation or immediate action for maintenance or replacement of any facility operated by the State, the State shall notify the United States of such emergency and shall promptly undertake emergency operation, maintenance or replacement as may be required." *Id.*, ¶23(a). It also allows the government "from time to time, [to] perform or participate in the care, operation, maintenance, and replacement of the joint-use...facilities" but only if the government had an advance agreement from the State about such work. *Id.*, ¶24.

The State Department of Water Resources was operating the pumps and conducting maintenance at Dos Amigos on the day of the incident at issue in this action. Pennino Decl., ¶4. No government employees were present at Dos Amigos when the incident occurred. Pennino Decl., ¶5.

Plaintiffs do not dispute the foregoing facts, but add the following:

The 1972 Supplement contains a certain explanatory recital that notes the 1961 Agreement

"provides that the State shall operate and maintain the joint-use facilities of the San Luis Unit but leaves for future agreement details relating to such operation and maintenance." Pennino Decl., Ex. B, 2:14-17. Paragraph 22 of the 1972 Supplement provides that the State will operate and maintain the facilities, but will do so "under criteria furnished by the United States." *Id.*, ¶22. In addition, the State will undertake maintenance that the United States directs the State to perform. *Id.*[2]

The 1972 Supplement requires the State to comply with certain federal laws. For example, Paragraph 40 requires the State to include in all contracts entered into in connection with the care, operation, and maintenance of facilities, that the contractor must comply with federal wage and hour laws. Moreover, Paragraph 41 memorializes the State's agreement to adhere to federal equal protection and non-discrimination laws, and to afford those provisions to all State employees, contractors, and labor unions affiliated with the facilities.

In addition to the 1961 Agreement and 1972 Supplement, the government and State entered into two other agreements with provisions Plaintiffs suggest are applicable to this action. On November 24, 1986, the parties entered into an agreement that provides for correction of water sharing in the event of outages for scheduled or unscheduled maintenance ("1986 Agreement"). Pl. R.J.N., Ex. 1, ¶10(c). The 1986 Agreement also repeats the equal opportunity and anti-discrimination requirements for employment found in the 1972 Supplement. *Id.*, ¶20. The parties entered into an agreement regarding operating procedures in February 1997 ("1997 Agreement"). Pl. R.J.N. Ex. 2. Section 5 of the 1997 Agreement, relating to outages, provides that the State will coordinate all scheduled outages in advance with the government. The 1997 Agreement recognizes that short-term outages and outages on the Annual Outages Plan will be necessary from time to time for routine maintenance. Id. Pursuant to the 1997 Agreement, the State will notify the government of "all status changes...such as...unit start and stop time...and any other limitation affecting the capability of the Joint-Use Facilities." *Id.*, ¶7.1.

In addition to the provisions of these agreements, Plaintiffs assert that the government has established safety criteria and directives for the San Luis Unit. These include mandatory fall protection (Deposition of Elizabeth Partridge ("Partridge Depo."), pp. 83-84, 117-118); mandatory lock-out/tag-out

[2] Paragraph 22 of the 1972 Supplement, and its provisions, apply to "federal-only facilities," as distinguished from joint-use facilities.

precautions to prevent water from entering pipes during inspections (*Id*. at 83-84, 125); and maintenance to prevent tripping hazards (*Id*. at 14).

The government requires additional safeguards for government employees when those employees are engaged in activities at Dos Amigos. For example, the government requires a job hazard analysis (Partridge Depo., p. 98). In addition, diving activities must comply with various commercial diving standards including the Bureau of Reclamation's Diving Safe Practice's Manual and the Reclamation Safety and Health Standards. Pl. R.J.N., Ex. 3.

**STANDARD OF REVIEW**

The government contends that this Court lacks jurisdiction over Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1). In considering a motion to dismiss for lack of subject matter jurisdiction, the plaintiff, as the party seeking to invoke the court's jurisdiction, always bears the burden of establishing subject matter jurisdiction. *Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001). The court presumes a lack of subject matter jurisdiction until the plaintiff proves otherwise. *See Kokkonen v. Guardian Life Ins. Co. of America*, 114 S.Ct. 1673, 1675 (1994).

The court must also consider whether the motion to dismiss is "facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High School*, 343 F. 3d 1036, 1039-40 n.2 (9th Cir. 2003); *see also, White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In the facial attack, a party challenges subject matter jurisdiction by asserting that the allegations in the complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual challenge, the truth of the allegations, which would otherwise invoke subject matter jurisdiction, is challenged and this Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir. 1988).

The government presents a factual challenge. Therefore, "[o]nce the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039-40 n.2.

## DISCUSSION

### Introduction

"[T]he United States may not be sued without its consent and [] the existence of such consent is a prerequisite to jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 211 (1983). Evidence of the government's consent must be unequivocal and may not be implied. *Blue v. Widnall*, 162 F.3d 541, 544 (9th Cir. 1998). The government's consent to suit defines the jurisdiction of the court to hear an action against the federal government. *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987). The party asserting jurisdiction has the burden to establish all jurisdictional facts. *Indust. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

Plaintiffs assert that jurisdiction is proper under the FTCA. The FTCA is a "limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976). "The language of 28 U.S.C. s 1346(b) is unambiguous, covering injuries 'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment ....'" *Id*. (quoting 28 U.S.C. §1346(b)). The FTCA defines the term "employee of the Government" to include "officers and employees of any Federal agency." 28 U.S.C. §2671. The definition of "employee" specifically excludes "any contractor with the United States." *Id*. This exclusion is known as the independent contractor exception to the FTCA.

### Vicarious Liability Claims

The government argues that the independent contractor exception bars this action. The government's position rests on the premise that Plaintiffs' negligence claims assert vicarious liability against the government for the negligent acts of State employees. The government points out that under the 1961 Agreement and 1972 Supplement, the government transferred the care, operation, and maintenance of Dos Amigos to the State to argue that all claims against the government must be vicarious.

Under the FTCA, the negligence of a contractor cannot be imputed to the government absent a showing that the government controlled and supervised the "detailed physical performance" and "day-to-day operations" of the contractor. *Autery v. United States*, 425 F.3d 944, 956 (9th Cir. 2005). Moreover,

"[c]ontractual provisions directing detailed performance generally do not abrogate the contractor exception." *Id*. at 957. Neither do detailed regulations and inspections, the ability to compel compliance with federal regulations, or the contractor's responsibility for maintaining property owned by the United States. *Id*.; *see also, Letnes v. United States,* 820 F.3d 1517, 1519 (9th Cir. 1987); *Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985).

The independent contractor exception bars vicarious liability claims against the government. Plaintiffs do not oppose this rule of law, but argue that it is inapplicable. Plaintiffs contend that they assert direct liability claims against the government for the alleged negligent acts or omissions of federal employees, and do not assert vicarious liability claims against the government for the negligent acts of State employees. Based on Plaintiffs' contention, this Court must view Plaintiffs' complaint as asserting direct liability claims against the government only, and determine the adequacy of the pleading from that position.

**Direct Negligence Claims**

Next, the Court considers Plaintiffs' direct negligence claims against the government.[3] The Court considers whether Plaintiffs state a claim pursuant to the standards of review applicable under Fed. R. Civ. P. 12(b)(6). In considering whether Plaintiffs have stated a claim, the Court considers as true the allegations of the complaint, as well as the judicially-noticeable agreements between the government and the State, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008). To survive Fed. R. Civ. P. 12(b)(6) scrutiny, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 52, 127 S. Ct. 1955, 1969 (2007).

As set forth above, the government is liable for claims brought under the FTCA to the extent a private party would be liable under similar circumstances. 28 U.S.C. §1346(b). The law of the state where the act or omission occurred determine whether an actionable duty exists under the FTCA. *Henderson v. United States*, 846 F.3d 1233, 1234 (9th Cir. 1988). Under California law, the government

---

[3]The government's motion and reply largely ignore Plaintiffs' direct liability claims, and rely almost entirely on vicarious liability law.

may be held liable for the government's negligent acts that proximately caused plaintiffs' damages. *Oakley v. United States*, 622 F.2d 447, 449 (9th Cir. 1980).

Plaintiffs allege that the government, though its management and inspections or lack thereof, created a dangerous condition for divers at Dos Amigos. Plaintiffs fault the government for failing to: ensure strict compliance with safe work and diving standards; ensure compliance with commercial diving standards; require the Dos Amigos facility to comply with the government's Reclamation Safety and Health Standards and Underwater Diving Safety requirements; provide and ensure proper diving equipment and safe procedures at Dos Amigos; maintain equipment that was designed to eliminate or reduce hazards to divers; establish and implement an effective injury prevention program; establish safe procedures, including a shut-down system; inspect adequately to discover unsafe conditions; maintain premises at Dos Amigos in a safe condition. In their premises liability claim, Plaintiffs allege that the government knew or should have known, in the course of its regular inspections, that the Dos Amigos facilities were poorly maintained, the design was hazardous and created an unreasonable risk of injury or death to divers, appropriate safety procedures were not been utilized, and the equipment was unsafe.

The parties do not dispute the relevant facts: The government transferred operation and maintenance of Dos Amigos to the State pursuant to the 1961 Agreement and 1972 Supplement. The government did not control or supervise the day-to-day operations at Dos Amigos. To the contrary, day-to-day operations and maintenance of the facility was delegated to the State through the agreements. The State was operating the pumps and conducting maintenance at the time of the incident. No government employee was present at the time of the incident. Mr. Alvarado was employed by the State as part of a dive team, diving at Dos Amigos was for the purpose of "proper operation," inspection and maintenance of the facility, and he died while performing an inspection at Dos Amigos. Moreover, by agreement between the government and the State, the State is responsible to undertake emergency response. Under these facts, Plaintiffs cannot state direct liability claims against the government.

In their complaint, as in opposition to this motion, Plaintiffs fail to establish that the government had an actionable duty to inspect or maintain Dos Amigos. On the contrary, through the 1961 Agreement and 1972 Supplement, the government delegated its duties to operate and maintain Dos Amigos to the State. Those duties were delegated to the State upon the conveyance in 1968. Dos

Amigos was transferred to the State "as a complete unit." Once transferred, the State was required to "undertake property and maintenance and replacements on the joint use facilities which are determined by either party to be necessary." By contractual agreement, then, the government delegated operational and maintenance duties to the State, and is therefore not responsible for the negligent operation and maintenance at Dos Amigos. *See Autery v. United States*, 424 F.3d 944, 959 (9th Cir. 2005) (even if government as landowner had duty to maintain safe environment by maintaining fire breaks, the contractual provisions delegating that duty precluded jurisdiction over plaintiff's claims based on independent contractor exception to FTCA).

Plaintiffs point to no contractual provisions that create an affirmative duty to inspect Dos Amigos or a duty of care to the Plaintiffs. The 1961 Agreement allows the government "from time to time to make an appropriate inspection of the facilities." Similarly, Paragraph 24 of the 1972 Supplement reads:

> FEDERAL PARTICIPATION IN CARE, OPERATION, MAINTENANCE, AND REPLACEMENT
> 24. The United States may, from time to time, perform or participate in the care, operation, maintenance, and replacement of the joint-use and Federal-only facilities, or provide special engineering and technical work in support of these activities: Provided, That such work shall be agreed to in advance. Cost of the work shall be subject to the appropriate provisions of Articles 34, 35, and 37.

Under these provisions the government had a *right* to inspect Dos Amigos; it had no duty to do so.

Plaintiffs seek to impose liability against the government for failure to exercise its retained control over Dos Amigos. Under California law, however, Plaintiffs may not recover against the government for its alleged failure to exercise retained control. In *Hooker v. Dept. of Trans.*, 27 Cal. 4th 198, 202 (2002), the California Supreme Court concluded:

> a hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite, but that a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained control affirmatively contributed to the employee's injuries. In this case, although plaintiff raised triable issues of material fact as to whether defendant retained control over safety conditions at the worksite, plaintiff failed to raise triable issues of material fact as to whether defendant actually exercised the retained control so as to affirmatively contribute to the death of plaintiff's husband. Therefore, the trial court properly granted summary judgment in favor of defendant, and the Court of Appeal erred in reversing that judgment.

Here, as in *Hooker*, Plaintiffs have failed to allege that the government "actually exercised the retained control so as to affirmatively contribute to the death of plaintiff's husband." *Id*. This rule of law applies

because the "liability of the contractor, the person primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage, it would be unfair to impose tort liability on the hirer of the contractor merely because the hirer retained the ability to exercise control over safety at the worksite. In fairness...the imposition of tort liability on a hirer should depend on whether the hirer *exercised the control that was retained in a manner that affirmatively contributed to the injury of the contractor's employee*." *Hooker*, 17 Cal. 4th at 210.

Thus, under California law, where the factual basis for the claim is that the hirer failed to exercise a general supervisory power to require the contractor to correct an unsafe procedure or condition of the contractor's own making, and there is no allegation that the hirer's conduct contributed in any way to the contractor's negligent performance by, e.g., inducing injurious action or inaction through actual direction, the government has no duty to Plaintiffs for merely failing to exercise a general supervisory power to prevent the creation or continuation of a hazardous practice, or by failing to exercise retained control.

Plaintiffs argue that the government had non-delegable duties to undertake appropriate safety measures at Dos Amigos. Plaintiffs rely on superceded case law, or case law outside this Court's jurisdiction, to support its position. Under controlling California law, a hirer may delegate to an independent contractor the duty to provide the contractor's employees with a safe working environment. *Tverberg Fillner Const., Inc.*, 49 Cal. 4th 518 *13 (2010). In opposition to the pending motion, Plaintiffs have failed to establish that they may assert direct negligence claims against the government as a matter of law.

**Conclusion**

Plaintiffs have the burden to establish that this Court has jurisdiction over Plaintiffs' claims. Any claims based on the liability of the State are precluded pursuant to the independent contractor exception to the FTCA; however, Plaintiffs contend that this argument is inapplicable because they assert no vicarious liability claims. Based on Plaintiffs' allegations and position, this Court agrees that the independent contractor exception is inapplicable. Nevertheless, Plaintiffs have failed to state a claim against the government. Plaintiffs fail to establish that the government owed an actionable duty to Plaintiffs. Pursuant to the agreements, the government delegated its duties to operate and maintain Dos

Amigos to the State. The government is permitted to delegate these duties under federal and state law. In addition, Plaintiffs allege that the government failed to exercise its retained control over Dos Amigos, but fail to allege that the government exercised that control affirmatively to contribute to the negligent death of Mr. Alvarado. Under these facts and California law, Plaintiffs fail to establish an actionable duty against the government. Accordingly, this Court dismisses Plaintiffs' complaint.

**Leave to Amend**

Under Fed. R. Civ. P. 15(a)(2), this Court generally gives leave to amend "freely" and "when justice so requires," even if the plaintiff fails to request leave to amend. This Court may, in its discretion, deny leave to amend when amendment of the claims would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir.2008). In this action, the Court finds that leave to amend is not futile. In opposition, Plaintiffs suggest that evidence is being developed that Mr. Alvarado's dive was at the direction of the government to search for quagga mussels. While this evidence contradicts Plaintiffs' allegations that Mr. Alvarado's dive was for the care and maintenance of Dos Amigos, if pled properly based on the alleged facts that Plaintiffs have good reason to believe exist, it could change the rules of law that apply to this case. Accordingly, this Court grants Plaintiffs leave to amend.

**ORDER**

For the foregoing reasons, this Court DISMISSES Plaintiffs complaint with leave to amend. Plaintiffs must file an amended complaint no later than **August 18, 2010.**

IT IS SO ORDERED.

**Dated: July 29, 2010** **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE